**E. D., Plaintiff-Appellant,**

v.

**R. H. D., Defendant-Respondent.**

**No. 25759.**

Missouri Court of Appeals, Kansas City District.

April 3, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 11, 1972.

Dwight L. Larison, Kansas City, for plaintiff-appellant.

Louis Wagner, Kansas City, for defendant-respondent.

DIXON, Judge.

This appeal presents in ultimate fact the single issue of the custody of four children, three girls, aged 10, 7, and 5, and a younger brother, aged 4.

The trial court, hearing the case on defendant-husband's cross bill, granted the husband a divorce and custody with no provision for visitation by the mother. The plaintiff-wife appeals raising only the issues of custody and support.

The wife asserts we review *de novo* and have the duty to make our own findings of fact entering a judgment in accord with those findings and the applicable law. She contends Paxton v. Paxton, Mo.App., 319 S.W.2d 280, is indistinguishable on its facts and controls the disposition of this appeal.

The husband contends that the findings of the trial court, with respect to custody of children, are entitled to deference where issues of credibility are involved and that the wife's conduct demonstrates her unfitness to have custody.

Neither party has favored the court with a fair and concise statement of facts (Rule 83.05[c] V.A.M.R.), but since as all agree, the determination of the best interests and welfare of these children is not only involved but imperative in the disposition of this case, the voluminous record of the evidence has been examined.

Of the issue with respect to the husband's right to a divorce, there can be no doubt. The wife admits to an act of adultery with James Schulze. The evidence likewise is conclusive that she has been in

his company on many occasions. Certain of these occasions are of such a nature that the inference of marital misconduct is well-nigh inescapable. Surveillance by detectives employed by the husband established that she remained overnight in the same motel room on one occasion and in his home overnight or until early morning hours on several occasions. On the issue central to this appeal, the effect of this conduct on the care of the children during the period of this misconduct, the evidence is silent. Except for an occasion when James Schulze in the company of the wife transported the children from summer camp to the home and an occasion when he was shown to have been present in the family home with the wife and one of her female friends until late in the evening or into the early morning hours, there is no evidence that plaintiff-wife's misconduct was under circumstances which would require a finding that it was deleterious to the welfare of the children.

The husband's brief and argument forcefully present the variances in the deposition and trial testimony of the wife as "perjury," thus demonstrating "moral unfitness" for custody.[1] The husband is not without fault. He denied ever having caused injury to a neighbor's dog requiring veterinarian treatment when he beat the dog with a stick, but independent witnesses testified to this outburst of temper and subsequent injury to the dog. There was also evidence of an outburst of temper and violence on the part of the husband when he went to the family home during the separation and jerked the phone cord out of the telephone to prevent his wife from calling the police. The husband also admitted to the possession and long perusal in the locked family bathroom of magazines described as "girlie" or "nude" magazines and which the trial court charitably characterized as having "little social value." The wife contended that on one occasion she witnessed the husband masturbating on one of his solitary visits to the bathroom with this literature. The husband denies that her claimed early morning peeping in the bathroom window was rewarded by any such edifying sight. The wife contended he had refused cohabitation for five years and urged her into infidelity with explicit directions as to the satisfaction of her sexual desires.

The apposition of all this sordid testimony and mutual vituperation inescapably suggests the adage concerning the color of pots and kettles.

From all this, no inescapable inference of fitness for custody can be drawn in favor of either party. The easy determination of custody on moral judgments respecting the character of one of the parties is not possible under this evidence. As appellant suggests, the facts concerning the moral fitness of the parties are striking in their similarity to Paxton. As in Paxton, resort must be made to the evidence which impinges on the central issue, the welfare of the children involved. In this case, as in many custody cases, the parties have so exhausted themselves with mutual vituperation as to leave the record barren of very much evidence of the facts which enable a fair and proper determination of the best interest of the child's welfare. Litigants and those who advise them might more profitably spend time and energy on producing evidence relating to the welfare of the children than the lack of moral character of the opposing spouse.

Pivotal to a determination of the issue of the custody of these children is a resolution of what may be characterized as the babysitting question. The trial court in his findings indicated that he found and believed that the wife had visited in the home of Mr. Schulze much more frequently than she admitted. From this and the time of the visits, he concluded that the wife had, in fact, left the children unattended while engaged in the questionable visits to the home of Mr. Schulze. This finding and belief of the trial court rests

1. L—— v. N——, Mo.App., 326 S.W.2d 751.

upon inference alone. Absent any evidence to the contrary, the inference alone might suffice. Here strong evidence exists that the wife did not avoid her responsibility for the care of the children. Several witnesses testified that the wife had arranged with them for the care of the children while she was working or at school. The husband, cross examined at length upon this issue, did not even claim she left the children alone on either her nocturnal or more obvious daylight excursions to the residence of Mr. Schulze. He claimed the children were left alone only once and then he diluted that assertion by admitting that he was not possessed of personal knowledge as to the fact of no one in attendance on the children, but upon the assumption he made from an external surveillance of the home during the night time hours during which no attendant for the children arrived or departed. Many of the visits made by the wife during the months of September, October and November were made at a time when the children would have been in school and according to their testimony were in school. The children in the testimony given by them to the court denied being left alone except for a few minutes after school. The children's testimony also disclosed that the children's week-long visit to the "lake" with the grandparents coincided calendar-wise with the most flagrant occasion of the nocturnal visits to Mr. Schulze.

On the question of the basic physical needs and care of the children, the evidence is not in essential quality conflicting. The wife testified, supported by other witnesses and the admissions of the father, that she cared properly for the children. The husband did assert that "she did not stay home as she should have" and that "he washed the children's hair" or caused it to be washed at a beauty shop. The frequency and time of these incidents were no where specified.

The foregoing demonstrates the difficulty of this case because the areas of prime concern to the determination of the issue of custody were so little explored.

Given this conflicting evidence on the basic moral qualities of the husband and wife and the paucity of evidence relating to the issue of the physical well being of the children with nothing more, it might be sufficient to accord "deference" to the trial court's judgment as respondent suggests. The record, however, suggests some facts which are not disputed which bear heavily on the issue of custody.

The father's employment requires travel for several days at a time. He plans for the care of the children to be in the hands of his 69-year-old mother. All of the evidence shows her to be a "regular" in the sense of "daily" user of alcohol. Some of the evidence shows her to be an "excessive" user of alcohol. She did not testify and, so far as the record demonstrates, the individual who would become the principal "custodian" of the children under the court's order was not even seen by the trial court.

There is evidence from the mother and another witness, corroborated by the evidence of the children, that the father had physically punished the child, Jeanette, with a board. This was perhaps not enough to establish cruel treatment on his part, but his admission that "sometimes she aggravated him" and that perhaps he corrected her more than the other children gives a ring of truth to the assertions of the children in their testimony which would, if taken as true, unquestionably create serious doubt as to his fitness for custody.

The similarity of the evidence in this case and the Paxton case in the area of moral behavior of the parties has been noted. Other striking factual similarities to Paxton appear in this case. A listing will demonstrate the analogy. Four children are involved. The only child who testified expressed a desire to remain with the mother. The only real complaint by the husband as to the wife's care of the chil-

dren is her absence from the home. The husband's business requires that he be absent for several days at a time. The care of the children if the husband retains custody would remain in his mother who is 69 years of age and in the case under consideration, some evidence of her drinking habits and health is likewise present. From a review of those facts and the strikingly similar facts of the Paxton case, we believe that the following language of Paxton should be applied to this case:

"Everything in this case, we believe, indicates that the mother should have custody—except only her most improper misbehavior with Dale Piper and possibly, to a lesser extent, with two other men. Do those incidents or does that one extended affair make her unfit now and forever, as a matter of fact, and in the eyes of the law, to continue to live with, associate with, and rear the two teenage daughters and the two young sons whom she conceived and nurtured and whose mother she is? Without further wrestling and without further written debate on these facts and as to the law applicable, we have reached the conclusion that they do not. We hold, therefore, that the trial court erred in awarding custody of these four minor children to the plaintiff and that the welfare and best interests of said children will be promoted and be best served through an award of custody to the mother. The question of child custody and allowances for their support and maintenance in this case as in every other divorce case is, of course, subject to future modification by the circuit court upon a showing of a change in condition or status." (l. c. 290)

The record in this case has been meticulously examined and the evidence weighed and pondered with care. Obedient to the precept that the welfare of the children overrides all else, the trial court's order must be set aside.

Because this case comes on reassignment, it has been under submission so long as to make the evidence concerning the wife's need and the husband's capability of support of little value. Inexplicable also was the trial court's failure to provide for visitation on the part of the mother.

We, therefore, reverse and remand this cause to the trial court to enter an order transferring custody to the mother with directions to take evidence, if necessary, to set an allowance for child support. The trial court shall also, upon further evidence, if necessary, provide for bi-weekly and summer visitation by the father.

SHANGLER, C. J., and CROSS, J., concur.

PRITCHARD, SWOFFORD and WASSERSTROM, JJ., not participating because not members of court at the time the case was submitted.